UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

CASE NO.: 3:13-bk-3830-JAF

ELLSWORTH R. ALEXANDER
And BENNIE A. ALEXANDER,

Debtors.
_____/

ELLSWORTH R. ALEXANDER
And BENNIE A. ALEXANDER,

Plaintiffs,

v.                                                              Adversary No.: 3:13-ap-544-JAF

JP MORGAN CHASE BANK, N.A.,

Defendant.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This proceeding came before the Court upon a Complaint to Determine Validity, Extent and Priority of Secured Claim and for Declaratory Judgment. Plaintiffs seek to strip off Defendant's second mortgage lien, have the lien voided and the claim declared to be wholly unsecured. The Court conducted a trial on the matter on April 15, 2014. In lieu of oral argument, the Court took the matter under advisement. Upon consideration of the evidence, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

In 2004, Plaintiffs purchased property located at 326 Holly Avenue, Jacksonville, FL (the "Property"). The Property is subject to a first mortgage lien held by Defendant. Defendant asserts that the payoff amount on its first mortgage is $100,283.34 while Plaintiffs asserts the payoff is $103,463.00. The Property is also subject to a second mortgage lien held by Defendant in the

approximate amount of $29,000.00.[1] On June 21, 2013, Plaintiffs filed a Chapter 13 bankruptcy petition.

### The Property

The Property consists of a 58 year old, 1,617 square foot concrete block/stucco three bedroom, two bathroom house situated on an approximate 1/5 acre lot. The Property is located in an older neighborhood with residential properties which are 40-60 years old. The front of the Property faces Holly Avenue. The side of the Property, where the garage and the family room are located, faces University Boulevard, a busy road on which the traffic count on a typical day is 12,500 cars. The wall of the garage is 55 feet from University Boulevard and the wall of the family room, which extends beyond the garage, is 73 feet from University Boulevard. The Property's proximity to University Boulevard causes noise from the street to be heard in the family room.

Shortly after Plaintiffs purchased the Property, they added a patio to the house. A little over a year ago, Plaintiffs put a new roof on the house and installed a new air conditioning unit. Since they purchased the Property, Plaintiffs have not replaced the kitchen cabinets, the plumbing, the bathroom vanities, the windows, or any appliances.

Kala Heald, who testified on behalf of Plaintiffs, has been a certified appraiser for over thirty years. Using the sales comparison approach[2], Ms. Heald valued the Property at $90,000.00. Ms. Heald testified and produced pictures demonstrating that the house has cracks on the back exterior wall, a crack across the living room, and cracks on the front steps. Ms. Heald testified that the house appears to have foundation problems which need to be investigated. Even if it is

---

[1] The parties agree that if the Court finds the value of the Property to be less than $100,283.34, Defendant's second lien is subject to strip off.

[2] The sales comparison approach to valuation of real property estimates a property's market value by comparing the subject property to similar properties which have been sold or listed for sale in the same or competing areas. In re Mocco, 222 B.R. 440, 457 (Bankr. D.N.J. 1998). Upward or downward adjustments are then made to the sales prices of the comparable properties to account for the differences between the subject property and the comparables. Id.

determined that the house does not have foundation problems, the cracks need to be repaired and repainted. The exterior of the house also has peeling paint which needs to be repainted.

Ms. Heald testified that there are glaring issues inside the house which need to be addressed including: 1) badly stained and worn ten year old carpet which needs to be replaced; 2) wood floors in the bedrooms and hallway which need to be refinished; 3) kitchen cabinets which need to be refinished; and 4) leaking windows which need to be replaced. Ms. Heald testified that the house has a new roof and air conditioner but needs work on almost everything else. Based upon her experience, Ms. Heald estimates that the cost to make the needed repairs would be between $10,300.00 and $15,500.00.

### 412 University Boulevard-Plaintiffs' Comparable One, Defendant's Comparable Two

Plaintiffs' Comparable One, which is located at 412 University Boulevard ("412 University"), is the same property as Defendant's Comparable Two. 412 University is located .01 miles west of the Property and faces University Boulevard. 412 University was sold for $110,000.00 on August 13, 2013. Plaintiffs' appraisal indicates that 412 University had new paint inside and out, a rebuilt fireplace, new carpets over the hardwood floors, new lifetime warranty thermal windows, and a security system. Ms. Heald made a downward adjustment to 412 University in the amount of $15,000.00 to account for its good condition relative to the Property's average condition and a downward adjustment in the amount of $5,160.00 to account for its greater square footage, which resulted in an adjusted sales price of $89,840.00. Ms. Heald testified that an adjustment for square footage is based upon the market for the area in which a property is being appraised. She testified that the adjustment based upon the market area for the Property is $25.00-$35.00 per square foot and that she adjusted $30.00 per square foot. However, dividing the

downward adjustment of $5,160.00 by 129, the greater square footage of 412 University, indicates that Ms. Heald adjusted $40.00 per square foot.

Daniel Stein, who testified on behalf of Defendant, has also been a certified appraiser for over thirty years.[3] Mr. Stein made a $10,000.00 upward adjustment to 412 University to account for its average condition versus the good condition of the Property and a downward adjustment in the amount of $4,000.00 to account for its greater square footage. Mr. Stein testified that 1) the roof on 412 University was last replaced in 1996, 2) 412 University does not have a new air conditioner (unlike the Property), and 3) 412 University's cabinets were the original cabinets. Mr. Stein opined that the Property is in better condition than 412 University and that a $15,000.00 downward adjustment to account for the difference in condition between the Property and 412 University is not warranted. Finally, Mr. Stein noted that any money spent on repairs at the Property would not result in a dollar for dollar adjustment because such repairs would make the Property better than the comparables.

In addition to the features for which Ms. Heald and Mr. Stein both made adjustments (condition and square footage), Mr. Stein made a number of other adjustments to 412 University. Mr. Stein made an upward adjustment in the amount of $5,000.00 to account for the fact that 412 University fronts University Boulevard, a $5,000.00 upward adjustment based on the fact that the Property is updated, a $1,000.00 downward adjustment to 412 University to account for the fact that it has four bedrooms instead of three, and an upward adjustment in the amount of $2,000.00 to account for 412 University having a patio rather than a screened in porch.

Mr. Stein justified the $5,000.00 upward adjustment to 412 University to account for the fact that it fronts University Boulevard by explaining that facing a busy street is worse than being on the side of a busy street because it is more difficult to back out of one's garage onto a busy street

---

[3] Mr. Stein also used the sales comparison approach.

than onto a non-busy street. However, the picture of 412 University contained in Defendant's appraisal evidences that it has a circular driveway. When asked what market data he used to derive the adjustment, Mr. Stein testified that in theory such an adjustment should be proven through the market. He testified that since there was only one sale on University Boulevard he made all the other adjustments for condition and everything else and it appeared the market showed there was a difference of about $10,000.00 for the difference in the busy street for the sales he used. When reminded that none of the other sales involved property on University Boulevard, Mr. Stein stated: "the other two sales weren't on University… so I make all the adjustments and then the difference would be the market's paying for the busy street. It's like a paired sales analysis."

Mr. Stein made a $5,000.00 upward adjustment to 412 University for updates. Mr. Stein based this adjustment on the fact that the Property has a new roof and the roof on 412 University was last replaced in 1996, the Property has a new air conditioner, and the Property has updated windows, appliances, kitchen cabinets, and vanities in both bathrooms. When questioned why he listed the windows as an update, Mr. Stein explained that the windows located in the Property are not its original windows. Mr. Stein testified that he does not know when the windows were replaced but that, based upon his observation, the windows, which are aluminum, began being used around 1990. However, Mr. Stein conceded that the windows in 412 University were newer than those in the Property. Additionally, Ms. Heald's appraisal indicates that 412 University has new lifetime warranty thermal windows. Moreover, Mr. Alexander bought the Property ten years ago and testified he has not replaced the kitchen cabinets, the bathroom vanities or any of the appliances.

### 5602 Clifton-Plaintiffs' Comparable Two, Defendant's Comparable One

Plaintiffs' Comparable Two, which is located at 5602 Clifton Avenue ("5602 Clifton"), is the same property as Defendant's Comparable One. 5602 Clifton is located .19 miles southwest of

the Property and 2 blocks south and ½ blocks west of the Arlington River. It was sold for $149,900.00 on September 30, 2013. Ms. Heald made a $5,000.00 downward adjustment to 5602 Clifton to account for its larger lot size than the Property, a $30,000.00 downward adjustment to account for the fact that it is in a quiet neighborhood and closer to the river, and a $15,000.00 downward adjustment to account for its good condition versus the average condition of the Property resulting in an adjusted sales price of $99,900.00.

Mr. Stein made a $3,000.00 downward adjustment to 5602 Clifton to account for its larger lot size, a downward adjustment in the amount of $5,000.00 to account for its distance from University Avenue as compared to the Property, and a $5,000.00 downward adjustment to account for the fact that it has a sunroom while the Property only has a screened porch, resulting in an adjusted sales price of $136,900.00.

Ms. Heald explained that she arrived at the $30,000.00 downward adjustment to 5602 Clifton by comparing Comparable Four, located at 5445 Grove Avenue ("5445 Grove")[4], which was .24 miles west of the Property, located in a quiet neighborhood, and not influenced by proximity to the river, to 412 University. Ms. Heald testified that other than the location, 412 University and 5445 Grove were basically the same house, i.e., they are the same size, the same age, they are in the same good condition, and they have the same kitchen cabinets. 412 University sold for $110,000.00 and 5445 Grove sold for $137,500.00. Given the similarities between 412 University and 5445 Grove, Ms. Heald attributed the $27,500.00 difference in sales price to the fact that 5445 Grove is in a quiet neighborhood as opposed to 412 University's location in the noisy University Boulevard area. Ms. Heald rounded the $27,500.00 to $30,000.00. While Ms. Heald acknowledged that 5602 Clifton was near the river and that the adjustment was a combination

---

[4] Ms. Heald used Comparable Four to define the market area but did not otherwise give any weight to it.

adjustment for both water proximity and being in a quiet neighborhood, she testified the adjustment was more attributable to the noise factor than water proximity. Mr. Stein acknowledged that 5602 Clifton is 2 blocks south and ½ blocks west of the river and in a much lower traffic area than the Property but believes a downward adjustment of only $5,000.00 is warranted.

### 5445 Grove-Plaintiffs' Comparable Four, Defendant's Comparable Three

As the Court noted, while Ms. Heald included 5445 Grove in her appraisal, she included it only to define the market area but did not give it any weight. However, Mr. Stein included 5445 Grove as his Comparable Three. Ms. Heald indicated in the report she did not use 5445 Grove because it was an older sale. However, the closing date of 5445 Grove was May 22, 2013, approximately a month prior to the filing of Plaintiffs' petition.

5445 Grove sold for $137,500.00. Ms. Heald made a $5,000.00 downward adjustment to 5445 Grove to account for its larger lot size, a $30,000.00 downward adjustment to account for it being in a quiet neighborhood, and a $4,800.00 downward adjustment to account for its greater square footage resulting in an adjusted sales price of $97,700.00. Mr. Stein made a $4,000.00 downward adjustment to 5445 Grove to account for its larger lot size, a $5,000.00 downward adjustment to account for its distance from University Boulevard, a $3,700.00 downward adjustment to account for its greater square footage, a $500.00 downward adjustment to account for its room count, and a $2,000.00 upward adjustment to account for the fact that it only has a patio while the Property has a screened porch, which resulted in an adjusted sales price of $126,300.00.

### Plaintiffs' Comparable Three-Irrelevant Sale

Although Ms. Heald used three comparables in her appraisal, she indicated that Comparable Three, located at 5360 Floral Avenue, is not really a comparable but was included to "show the top of the market." Mr. Stein testified that Plaintiffs' Comparable Three is not comparable because it

7

has 2,263 square feet as compared to the Property's 1,617 square feet, resulting in an adjustment for gross living area of well over 10% of the sales price. Mr. Stein testified that such an adjustment does not fall within Fannie Mae's appraisal guidelines. Mr. Stein also testified that Ms. Heald made a net adjustment to Comparable Three which exceeded 15% of the sales price and a gross adjustment to Comparable Three which exceeded 25% of the sales price, either of which renders it an irrelevant sale. The Court finds Comparable Three to be an irrelevant sale and will not include it in its analysis.

### Valuation of Property

When asked how she arrived at the appraised value of the Property, Ms. Heald testified that she gave "full weight" to 412 University. While Ms. Heald did not elaborate or explain what giving "full weight" to a comparable means, it appears that she valued the Property by using the adjusted sales price of 412 University, $89,840.00, and rounded it up the nearest thousand, $90,000.00. Mr. Stein indicated that he gave more weight to 412 University but appraised the Property at somewhere in the middle of the adjusted sales prices of 412 University, 5602 Clifton, and 5445 Grove. Based upon Mr. Stein's value of $129,000.00, it appears that he gave twice as much weight to 412 University as he did to 5602 Clifton and 5445 Grove.

### Conclusions of Law

Section 506 of the Bankruptcy Code permits a debtor to value an estate's interest in property, bifurcating a claim into secured and unsecured components. Section 506 provides in pertinent part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such

> creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1) (West 2014). Section 1322(b)(2) of the Bankruptcy Code permits a Chapter 13 plan to "modify the rights of holders of secured claims, other than a claim secured only be a security interest in real property that is the debtor's principal residence." In Nobelman v. Am. Savings Bank, 508 U.S. 324, 332 (1993), the Supreme Court held that § 1322(b)(2) prohibits a debtor from reducing an under-secured homestead mortgage to the fair market value of the mortgaged residence. However, the Court left open the issue of whether a debtor can strip off a wholly unsecured home mortgage. In Tanner v. Firstplus Fin., Inc. (In re Tanner), 217 F.3d 1357, 1360 (11th Cir. 2000) the Eleventh Circuit held that a wholly unsecured claim is not protected from modification under § 1322(b)(2).

"Valuation of assets 'is not an exact science and has inherent vagaries.'" In re Brown, 289 B.R. 235, 238 (Bankr. M.D. Fla. 2003) (quoting First Am. Bank of Va. v. Monica Road Assocs. (In re Monica Road Assocs.), 147 B.R. 385, 389 (Bankr. E.D. Va. 1992)). A bankruptcy court is not bound by valuations submitted by appraisers and may form its own opinion as to the value of property. In re Grind Coffee & Nosh, LLC, 2011 WL 1301357, *6 (Bankr. S.D. Miss. April 4, 2011). "Heightened scrutiny is appropriate when two competent appraisals are presented by qualified appraisers stating widely divergent values." Id. Rather than choosing one appraisal over another, that is accepting one and rejecting the other in its entirety, the better reasoned approach is to review all of the proposed comparables and include only those that assist the Court in its determination. In re Brown, 289 B.R. at 238. Additionally, if the parties use

common comparables but arrive at different adjusted sales prices, it is appropriate for the Court to review the adjustments and determine an appropriate adjusted sales price.

### Analysis of Comparables

### 412 University

Based upon Ms. Heald's explanation and the pictures accompanying her appraisal, the Court finds Ms. Heald's downward adjustment in the amount of $15,000.00 to account for 412 University's good condition relative to the average condition of the Property to be more reliable than Mr. Stein's $10,000.00 upward adjustment. However, the Court finds Mr. Stein's $4,000.00 downward adjustment to 412 University to account for its greater square footage than the Property's square footage to be appropriate.

The Court finds Mr. Stein's upward adjustment of $5,000.00 to 412 University because it faces, rather than sides, University Boulevard to be unwarranted. While Mr. Stein testified that facing a busy street is worse than being on the side of a busy street because it is more difficult to back out of one's garage onto a busy street than onto a non-busy street, the picture of 412 University contained in Mr. Stein's appraisal evidences that it has a circular driveway. Accordingly, Mr. Stein's explanation would not apply in this instance. Additionally, Mr. Stein's explanation as to the market data he used to derive the adjustment is unconvincing. Even assuming that some upward adjustment to account for pulling out of one's driveway onto University Boulevard rather backing out of one's driveway onto Holly Avenue is warranted, the Court does not have enough information to make such an adjustment.

The Court finds that Mr. Stein's upward adjustment to 412 University in the amount of $5,000.00 for updates is warranted but only because of the fact that the Property has a new roof and the roof on 412 University was last replaced in 1996. Mr. Stein's observation that the Property has

updated windows, appliances, kitchen cabinets, and vanities in both bathrooms is incorrect. When questioned why he listed the windows as an update, Mr. Stein explained that the windows are not the original windows in the Property. Mr. Stein testified that he does not know when the windows were replaced but that, based upon his observation, the windows, which are aluminum, began being used around 1990. However, Mr. Stein conceded that the windows in 412 University were newer than those in the Property. Additionally, Ms. Heald's appraisal indicates that 412 University has new lifetime warranty thermal windows. Moreover, Mr. Alexander bought the Property ten years ago and testified he has not replaced the kitchen cabinets, the bathroom vanities or any of the appliances.

The Court finds that the $1,000.00 downward adjustment to 412 University to account for the fact that it has four bedrooms instead of three and the $2,000.00 upward adjustment to 412 University for having only a patio versus the Property having a screened porch are warranted.

Taking into account the $15,000.00 downward adjustment to 412 University to account for its good condition versus the average condition of the Property, the $4,000.00 downward adjustment to account for its greater square footage than the Property, the $5,000.00 upward adjustment to account for a new roof on the Property, a $1,000.00 downward adjustment to account for the fact that it has four bedrooms instead of three, and a $2,000.00 upward adjustment to account for the fact that it only has a patio while the Property has a screened porch, the Court finds the adjusted sales price of 412 University to be $97,000.00.

### 5602 Clifton

In light of the fact that the Duval County Public records assessed the land value of the Property at $16,975.00 and the land value of 5602 Clifton at $22,050.00, the Court finds that the

proper downward adjustment to 5602 Clifton for its larger lot size is $5,000.00.[5] The Court finds Ms. Heald's explanation as to how she arrived at the adjustment for location to be both reasonable and credible and finds that a $27,500.00 downward adjustment to 5602 Clifton for its location is warranted.

As the Court previously discussed with respect to 412 University, the Court finds a $15,000.00 downward adjustment to 5602 Clifton to account for its good condition versus the average condition of the Property to be warranted. Finally, the Court agrees with Mr. Stein that a $5,000.00 downward adjustment to 5602 Clifton to account for the fact that it has a sunroom while the Property only has a screened porch is warranted.

Taking into account the $5,000.00 downward adjustment to 5602 Clifton to account for its larger lot size than the Property, the $27,500.00 downward adjustment to account for it being located in a quieter neighborhood and closer to the river than the Property, the $15,000.00 downward adjustment to account for its good condition versus the average condition of the Property, and the $5,000.00 downward adjustment to account for the fact that it has a sunroom while the Property has only a screened porch, the Court finds the adjusted sales price of 5602 Clifton to be $97,400.00.

### 5445 Grove

The Court finds 5445 Grove to be an appropriate comparable. The Court finds that a $5,000.00 downward adjustment to 5445 Grove to account for its larger lot size is appropriate, a $22,500.00 downward adjustment to account for it being in a quiet neighborhood is appropriate, a $3,700.00 downward adjustment to account for its greater square footage is appropriate, and a

---

[5] Mr. Stein's contention that the assessed value is only 85% of the market value would increase rather than decrease the downward adjustment; $16,975.00 is 85% of $19,970.00 and $22,050.00 is 85% of $25,941.00. The downward adjustment attributable to lot size would increase from $5,075.00 to $5,971.00.

$2,000.00 upward adjustment for the fact that it only has a patio is appropriate. Taking these adjustments into account, the Court finds the adjusted sales price of 5445 Grove to be $108,300.00.

### Valuation of the Property

As the Court noted, Ms. Heald appears to have valued the Property by using the adjusted sales price of 412 University and rounding it up to the nearest thousand while Mr. Stein gave more weight to the adjusted sale prices of 412 University but also took into account the adjusted sales prices of 5602 Clifton and 5445 Grove. The Court finds Mr. Stein's method to be more appropriate. The Court finds the value of the Property on the petition date to be $99,925.00.

Because the value of the Property on the petition date was $99,925.00, an amount less than $100,283.84, Defendant's second mortgage is wholly unsecured, is not subject to § 1322(b)(2)'s anti-modification provision, and can be stripped off. The Court will enter a separate judgment consistent with these Findings of Fact and Conclusions of Law.

**DATED** this 23 day of July, 2014 at Jacksonville, Florida.

JERRY A. FUNK
United States Bankruptcy Judge